**Abiud Reyes RIVERA, Debtor.**

**Abiud Reyes Rivera, Appellant,**

v.

**Jorge A. Bracetty Matos, Appellee.**

**BAP No. PR 12–087.**

**Bankruptcy No. 12–05966–MCF.**

United States Bankruptcy Appellate Panel of the First Circuit.

June 26, 2013.

---

George Otero Calero, Esq., on brief for Appellant.

Jose M. Prieto Carballo, Esq., on brief for Appellee.

Before HILLMAN, DEASY, and BAILEY, United States Bankruptcy Appellate Panel Judges.

PER CURIAM.

Abiud Reyes Rivera (the "Debtor") appeals from the bankruptcy court's order dismissing his bankruptcy case pursuant to § 109(g)(2) [1] and prohibiting him from filing another bankruptcy petition for 180 days. For the reasons set forth below, we **AFFIRM.**

## *BACKGROUND*

The Debtor owned certain real property encumbered by a mortgage held by Jorge

---

1. All references to the "Bankruptcy Code" or to specific statutory sections are to the Bankruptcy Code of 1978, as amended, 11 U.S.C. § 101, *et seq.* All references to a "Bankruptcy Rule" shall be to the Federal Rules of Bankruptcy Procedure.

Bracetty Matos ("Bracetty"). In September 2011, the Debtor filed his first chapter 13 case on the eve of foreclosure. Bracetty moved for relief the automatic stay due to the Debtor's failure to make post-petition mortgage payments. Upon the Debtor's failure to file a timely response to the motion, the bankruptcy court granted Bracetty relief from stay. Thereafter, on July 24, 2012, the Debtor filed a motion seeking to voluntarily dismiss his bankruptcy case so that he could file a new case to stay a foreclosure sale scheduled for August 1, 2012. On July 30, 2012, the bankruptcy court entered an order dismissing his case.

A few hours later that same day, the Debtor filed a new chapter 13 case. Bracetty moved to dismiss the petition, arguing that the Debtor was "legally impounded" from filing the new petition pursuant to § 109(g)(2) because he had, in the preceding 180 days, voluntarily dismissed his case following Bracetty's request for relief from stay. The Debtor filed a response, arguing that his new petition did not violate § 109(g)(2) because there was no other pending case at the time he filed the new petition. In a supplement to his motion to dismiss, Barcetty further argued that the Debtor's filing was in bad faith. He requested damages and asked the bankruptcy court to dismiss the case with a bar for refiling for a period of one year.

At a hearing on November 29, 2012, the Debtor argued that bad faith requires more than a showing that the petition was filed in order to stop a foreclosure. According to the Debtor, his actions were not done in bad faith because he informed the court that he needed to dismiss his case so that he could file a new one to prevent the foreclosure sale, and the bankruptcy court granted the dismissal. The bankruptcy court rejected the Debtor's argument. First, it noted that it did not condone the Debtor's actions by granting the motion to dismiss. As the court pointed out, it did not have any discretion as to whether to grant the dismissal, because when a chapter 13 debtor files a motion for voluntary dismissal, the dismissal is automatic. In addition, the bankruptcy court determined that it did not have to consider the issue of bad faith because this was clearly a case under § 109(g). At the conclusion of the hearing, the bankruptcy court entered an order providing:

> For the reasons stated in open court, the motion to dismiss filed by Jorge Bracetty (Docket No. 8) is granted. The case is dismissed with prejudice pursuant to 11 U.S.C. § 109(g). The debtor is prohibited from filing another bankruptcy petition for a period of 180 days.

This appeal followed.

### JURISDICTION

██ We are "duty-bound" to determine our jurisdiction before proceeding to the merits even if not raised by the litigants. *See Boylan v. George E. Bumpus, Jr. Constr. Co., Inc. (In re George E. Bumpus, Jr. Constr. Co., Inc.)*, 226 B.R. 724, 725 (1st Cir. BAP 1998). We may hear appeals from "final judgments, orders, and decrees [pursuant to 28 U.S.C. § 158(a)(1) ] or with leave of the court, from interlocutory orders and decrees [pursuant to 28 U.S.C. § 158(a)(3) ]." *Fleet Data Processing Corp v. Branch (In re Bank of New England Corp.)*, 218 B.R. 643, 645 (1st Cir. BAP 1998) (internal quotations omitted). Generally, an order dismissing a chapter 13 case is a final, appealable order. *See Pellegrino v. Boyajian (In re Pellegrino)*, 423 B.R. 586, 589 (1st Cir. BAP 2010) (citing *Howard v. Lexington Invs., Inc. (In re Howard)*, 284 F.3d 320 (1st Cir.2002)); *Gonzalez–Ruiz v. Doral Fin. Corp. (In re Gonzalez–Ruiz)*, 341 B.R. 371, 375 (1st Cir. BAP 2006). Ac-

cordingly, the order is final for purposes of appeal, and we have jurisdiction.

### STANDARD OF REVIEW

 A bankruptcy court's findings of fact are reviewed for clear error and its conclusions of law are reviewed *de novo*. *See Lessard v. Wilton–Lyndeborough Coop. Sch. Dist.*, 592 F.3d 267, 269 (1st Cir.2010). We review an order dismissing a chapter 13 case for abuse of discretion. *Howard v. Lexington Invs.*, 284 F.3d at 322 (citations omitted). "A bankruptcy court abuses its discretion if it ignores a material factor deserving of significant weight, relies upon an improper factor or makes a serious mistake in weighing proper factors." *Id.* at 323 (internal quotations and citation omitted).

### DISCUSSION

The bankruptcy court dismissed the Debtor's bankruptcy case pursuant to § 109(g)(2). Although Bracetty argues that dismissal was also warranted due to the Debtor's bad faith, we do not need to decide that issue because dismissal was warranted under § 109(g)(2).

### I. Section 109(g)(2)

Section 109(g)(2) provides, in relevant part:

Notwithstanding any other provision of this section, no individual ... may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if—

. . .

(2) the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362 of this title.

11 U.S.C. § 109(g)(2).

 Congress enacted § 109(g)(2) in 1984 for the purpose of curbing what it perceived to be abusive repetitive bankruptcy filings by debtors. *Grossman v. Beal (In re Beal)*, 347 B.R. 87, 89 (E.D.Wis.2006) (citing 130 Conf., Rec. 20, 088 (1984) (Statements of Sen. Hatch); Ned W. Waxman, *Resolving the Split of Authority Concerning Code Section 109(g)(2)*, 10 Norton Bankruptcy Law Advisor 1, 1 (2005)). "The typical scenario that the provision is intended to prevent is a debtor's voluntary dismissal of a case and subsequent refiling of a new case for the purpose of 'preventing creditors from acquiring relief from the automatic stay and pursuing foreclosing remedies in state court proceedings.'" *Id.* (citations omitted). The statute gives secured creditors a 180–day window to pursue state law remedies free of the automatic stay. *Id.* (citations omitted); *see also* William L. Norton Jr. & William L. Norton III, *Norton Bankruptcy Law & Practice 2d* § 115.7 (2006) (stating that "[§ ] 109(g)(2) was enacted to defeat the practice observed in some jurisdictions of multiple refilings in an effort to overcome the grant of relief from the stay in a prior case").

While the language of § 109(g)(2) may appear straightforward, courts are divided on its proper application. *In re Durham*, 461 B.R. 139, 142 (Bankr.D.Mass.2011) (citing *In re Richter*, No. 10–01260, 2010 WL 4272915, at *2 (Bankr.N.D.Iowa Oct. 22, 2010)). As the *Durham* court stated:

Three distinct views have been articulated—a mandatory approach, a discretionary approach, and a causal connection approach. *See In re Richter*, 2010 WL 4272915, at *2 (Bankr.N.D.Iowa 2010). Courts following the mandatory approach consider § 109(g) to be unambig-

uous. Adhering to the U.S. Supreme Court's admonition in *Connecticut National Bank v. Germain* that "courts must presume that a legislature says in a statute what it means and means in a statute what it says there," these courts interpret § 109(g)(2) as an eligibility requirement mandating dismissal regardless of the debtor's motives in filing a second case within the 180–day time bar. *See In re Andersson,* 209 B.R. 76, 78 (6th Cir. BAP 1997) (citing *Conn. Nat'l Bank v. Germain,* 503 U.S. 249, 253–54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992)); *Kuo v. Walton,* 167 B.R. 677 (M.D.Fla. 1994) (citing *In re Tooke,* 133 B.R. 661 (Bankr.M.D.Fla.1991)).

Courts taking the discretionary approach construe § 109(g)(2) as discretionary to the extent "the creditor is not unfairly prejudiced, a dismissal would be absurd or illogical, or when the creditor (and not debtor) acted in bad faith." *In re Richter,* 2010 WL 4272915, at *3 (Bankr.N.D.Iowa 2010). These courts suggest that an absolutist interpretation of § 109(g)(2) could lead to "absurd results" in rewarding creditors acting in bad faith while punishing good-faith debtors or otherwise not effectuating Congress's intent in enacting § 109(g)(2) to curb abuse by a limited group of debtors. *In re Richardson,* 217 B.R. 479, 482 (Bankr.M.D.La.1998); *see In re Luna,* 122 B.R. 575, 577 (9th Cir. BAP 199[1] ) ("Mechanical application of section 109(g)(2) would reward [the creditor] for acting in bad faith and punish [the debtor] for acting in good faith."); *In re Santana,* 110 B.R. 819 (Bankr. W.D.Mich.1990) (holding that courts should apply § 109(g)(2) as Congress intended it—to operate in only a limited number of cases).

The third approach ... the causal connection approach—interprets § 109(g)(2) as requiring some relationship between a debtor's request for a voluntary dismissal and a creditor's request for relief from the automatic stay. *See In re Copman,* 161 B.R. 821, 824 (Bankr.E.D.Mo. 1993) (finding "no connection" between the debtor's voluntary dismissal of the case and the creditor's request for relief from stay). It stakes out a middle ground between the other two approaches. The underlying rationale for the causal connection approach is that § 109(g)(2) was enacted "for the sole purpose of curbing abusive repetitive bankruptcy filings by debtors seeking to overcome the grant of relief to a creditor from a stay in a prior case" and the statutory language is a direct response to that concern. *In re Beal,* 347 B.R. 87, 92 (Bankr.E.D.Wis.2006) (citing S.Rep. No. 65, 98th Cong. 1st Sess. 74 (1983)). Without § 109(g)(2), § 1307(a), for example, offers debtors the unlimited right to voluntarily dismiss their cases and then refile at their own convenience to, in effect, "string along a foreclosing creditor." *In re Copman,* 161 B.R. 821, 823 (Bankr.E.D.Mo.1993) (citing *In re Santana,* 110 B.R. 819, 821 (Bankr. W.D.Mich.1990)); *see In re Ramos,* 212 B.R. 29, 30 (Bankr.D.P.R.1997).

*Id.* at 141–42 (footnote omitted).

While the First Circuit has not directly interpreted the meaning of § 109(g)(2), at least two courts in this circuit have adopted the causal connection approach. *See id.; see also In re Lopez Ramos,* 212 B.R. 29, 30 (Bankr.D.P.R.1997). We need not adopt a particular approach in this case, however, as this case clearly falls within § 109(g)(2) under any approach.

■ In the Debtor's first case, the bankruptcy court granted Bracetty relief from stay to continue foreclosure proceedings. Once the foreclosure sale was scheduled, the Debtor moved to voluntarily dis-

miss his case so that he could file a new one to stay the sale. The bankruptcy court granted the dismissal (as it was required to do), and, a few hours later that same day, the Debtor filed the subject petition. The Debtor admittedly dismissed his case and refiled the same day in order to overcome the grant of relief from the stay in his prior case, which is exactly the practice § 109(g)(2) was intended to defeat. The Debtor was not eligible to file the second case under the mandatory language of § 109(g). There is little doubt that the secured creditor who had a foreclosure sale scheduled in a few days would be prejudiced by further delay and, clearly, there is a causal connection between the Debtor's request for voluntary dismissal and Bracetty's request for relief from the stay. Thus, pursuant to § 109(g)(2), the Debtor was ineligible to file a second bankruptcy case within 180 days of voluntarily dismissing his first one.

■ The Debtor argues that § 109(g)(2) does not apply because he did not have a pending case at the time he filed his second petition. His argument has no merit. Section § 109(g) requires only that a debtor has been a debtor in a case "at any time in the preceding 180 days." Whatever approach we might adopt, there is no requirement that the first case was pending when the second case was filed. Thus, the bankruptcy court did not err in dismissing the Debtor's chapter 13 case.

## II. Sanctions

In his brief, Bracetty asks us to bar the Debtor from refiling a bankruptcy petition for two years. He also seeks to recover attorneys' fees incurred in defending this appeal, $5,509.61 for reimbursement of the cost of the two foreclosure proceedings which were thwarted due to the Debtor's filings, $7,500.00 for reimbursement of the costs incurred in defending his rights in the two bankruptcy cases, and punitive damages of $25,000.00 for the Debtor's lack of good faith and abuse of law.

■ Even if we construe Bracetty's request as one for damages and costs for a frivolous appeal under Bankruptcy Rule 8020,[2] that request would fail. Under Bankruptcy Rule 8020, the Panel has the express authority to award damages and costs against a party for a frivolous appeal. A prerequisite to awarding sanctions under Bankruptcy Rule 8020 is that the movant must meet the procedural requirements of Bankruptcy Rule 8020. *See Lumb v. Cimenian (In re Lumb)*, 401 B.R. 1, 9 (1st Cir. BAP 2009) (citing *Maloni v. Fairway Wholesale Corp. (In re Maloni)*, 282 B.R. 727, 734 (1st Cir. BAP 2002)). Bankruptcy Rule 8020 requires that sanctions be requested by a separately filed motion or by notice from the Panel. *See* Fed. R. Bankr.P. 8020. Notice and an opportunity to respond must be given prior to any determination by the court. *Id.* The requirement of a separately filed motion is strict, and failure to comply results in the denial of the request for sanctions. *Id.* Here, Bracetty did not meet the procedural requirement of Bankruptcy Rule 8020 because he did not file a separate motion requesting costs and damages. Thus, the request, as presented, is **DENIED**.

## CONCLUSION

For the reasons set forth above, we **AFFIRM** the bankruptcy court's order

---

**2.** Bankruptcy Rule 8020 provides:
 If a ... bankruptcy appellate panel determines that an appeal ... is frivolous, it may, after a separately filed motion ... and reasonable opportunity to respond, award just damages and single or double costs to the appellee.
Fed. R. Bankr.P. 8020.

dismissing the Debtor's bankruptcy case pursuant to § 109(g)(2), and prohibiting him from filing another bankruptcy petition for 180 days. We **DENY** Bracetty's request for sanctions.